**ORAL ARGUMENT NOT YET SCHEDULED**

**No. 18-5233**

# United States Court of Appeals for the District of Columbia Circuit

ARTIE DUFUR,
*Plaintiff-Appellant*,

v.

UNITED STATES PAROLE COMMISSION,
*Defendant-Appellee.*

On Appeal from the United States District Court
for the District of Columbia

**OPENING BRIEF OF COURT-APPOINTED AMICUS CURIAE IN SUPPORT OF PLAINTIFF-APPELLANT**

June 2, 2021

Roman Martinez
Caroline A. Flynn
*Counsel of Record*
Morgan Hoffman*
Latham & Watkins LLP
555 Eleventh Street, NW
Suite 1000
Washington, DC 20004
(202) 637-2200
caroline.flynn@lw.com

* Admitted to practice in Utah only. All work supervised by a member of the DC Bar.

*Court-Appointed Amicus Curiae in Support of Plaintiff-Appellant*

## CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES

Pursuant to Circuit Rule 28(a)(1), the undersigned counsel certifies the following:

**A. Parties and Amici.** The parties appearing before the district court were plaintiff Artie Dufur and defendant United States Parole Commission. The parties appearing before this Court are appellant Dufur, appellee United States Parole Commission ("the Commission"), and court-appointed amicus curiae for appellant Caroline A. Flynn.

**B. Ruling Under Review**

The ruling under review is the Memorandum Opinion dated May 24, 2018, issued by the Honorable Randolph D. Moss granting the Commission's motion to dismiss. That opinion is included in the joint appendix at JA32-57 and published at 314 F. Supp. 3d 10.

**C. Related Cases**

This case has not previously been before this Court or any other court. Another appeal currently pending before this Court, *Dufur v. United States Parole Commission*, No. 21-5089, involves the same parties but concerns Dufur's parole proceeding in 2018, a different proceeding than the 2016 proceeding under review here.

*<u>/s/ Caroline A. Flynn</u>*
Caroline A. Flynn
LATHAM & WATKINS LLP
555 Eleventh Street, NW
Suite 1000
Washington, DC 20004
(202) 637-2200
caroline.flynn@lw.com

*Court-Appointed Amicus Curiae in Support of Plaintiff-Appellant*

## STATEMENT IN SUPPORT OF ORAL ARGUMENT

Court-appointed amicus requests oral argument. There are substantial grounds for reversing the district court's ruling dismissing the appellant's challenge to his parole denial. In addition, a special panel of this Court directed the parties and amicus to address a complex question regarding federal habeas procedure and the district court's subject-matter jurisdiction. Exploration of these issues at oral argument would assist the Court in rendering its decision.

## TABLE OF CONTENTS


Page

CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES ..... i

STATEMENT IN SUPPORT OF ORAL ARGUMENT ..... iii

TABLE OF AUTHORITIES ..... vi

GLOSSARY OF ACRONYMS AND ABBREVIATIONS ..... xiv

INTRODUCTION ..... 1

JURISDICTIONAL STATEMENT ..... 4

STATEMENT OF ISSUES ..... 4

STATUTES AND REGULATIONS ..... 5

STATEMENT OF THE CASE ..... 5

A. Dufur's State And Federal Criminal History ..... 6

B. Dufur's Prior Parole Proceedings ..... 9

C. Dufur's 2016 Mandatory Parole Hearing ..... 11

D. District Court Proceedings ..... 14

E. Proceedings On Appeal ..... 18

SUMMARY OF ARGUMENT ..... 19

STANDARD OF REVIEW ..... 22

ARGUMENT ..... 22

I. DUFUR'S FAILURE TO STYLE HIS SUIT AS A HABEAS ACTION DID NOT DEPRIVE THE DISTRICT COURT OF SUBJECT-MATTER JURISDICTION ..... 22

**Page**

II. THE COMMISSION'S DENIAL OF MANDATORY PAROLE EXCEEDED ITS STATUTORY DISCRETION AND VIOLATED DUE PROCESS ....................32

A. The Court Must Vacate A Denial Of Mandatory Parole Under Section 4206(d) That Exceeds The Commission's Statutory Discretion Or Denies Due Process ....................33

B. The Commission's Finding That Dufur "Seriously Violated Institution Rules" Exceeded Its Statutory Discretion And Was Irrational ....................37

C. The Commission Improperly Determined That It Is "Reasonably Probable" That Dufur Will Commit Another Crime ....................41

D. A Remand For A New Parole Determination Is Necessary If Either Basis Of The Commission's Decision Is Found Invalid ....................50

CONCLUSION ....................52

## TABLE OF AUTHORITIES

**Page(s)**

### CASES

*Aamer v. Obama*,
742 F.3d 1023 (D.C. Cir. 2014) .......... 30

*Abuelhawa v. United States*,
556 U.S. 816 (2009) .......... 37

*Air Courier Conference of America v. American Postal Workers Union*,
498 U.S. 517 (1991) .......... 28

*Alamo v. Clay*,
137 F.3d 1366 (D.C. Cir. 1998) .......... 35

**Bailey v. Fulwood*,
793 F.3d 127 (D.C. Cir. 2015) .......... 4, 24, 33, 34

*Barnhart v. Sigmon Coal Co.*,
534 U.S. 438 (2002) .......... 43

*Bruscino v. True*,
708 F. App'x 930 (10th Cir. 2017) .......... 36

*Burton v. Stewart*,
549 U.S. 147, 152-53 (2007) .......... 28

*Casino Airlines, Inc. v. National Transportation Safety Board*,
439 F.3d 715 (D.C. Cir. 2006) .......... 21, 50

**Castro v. United States*,
540 U.S. 375 (2003) .......... 20, 24

*Chatman-Bey v. Thornburgh*,
864 F.2d 804 (D.C. Cir. 1988) (en banc) .......... 24, 26

*Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.*,
467 U.S. 837 (1984) .......... 39

** Authorities upon which amicus chiefly relies are marked with asterisks.*

**Page(s)**

*Curtis v. Chester*,
626 F.3d 540 (10th Cir. 2010) ....................34

*Daniel v. Fulwood*,
766 F.3d 57 (D.C. Cir. 2014) ....................22

**Davis v. United States Sentencing Commission*,
716 F.3d 660 (D.C. Cir. 2013) ....................16, 22, 29

*District Attorney's Office for Third Judicial Dist. v. Osborne*,
557 U.S. 52 (2009) ....................27

*Dolan v. United States Postal Service*,
546 U.S. 481 (2006) ....................37

*Dufur v. Sullivan*,
46 F.3d 1140, 1995 WL 37299 (9th Cir. 1995) ....................9, 10

*Dufur v. United States Parole Commission*,
No. 18-cv-2156, 2020 WL 2198049 (D.D.C. May 6, 2020) ....................14

*Dupree v. Jefferson*,
666 F.2d 606 (D.C. Cir. 1981) ....................5

*Edwards v. Balisok*,
520 U.S. 641 (1997) ....................27

*Equal Employment Opportunity Commission v. St. Francis Xavier Parochial School*,
117 F.3d 621 (D.C. Cir. 1997) ....................5

*Fazzini v. Northeast Ohio Correctional Center*,
473 F.3d 229 (6th Cir. 2006) ....................34

*Fletcher v. Reilly*,
433 F.3d 867 (D.C. Cir. 2006) ....................26

*Ford v. Massarone*,
902 F.3d 309 (D.C. Cir. 2018) ....................35, 40

*Fort Bend County v. Davis*,
139 S. Ct. 1843 (2019) ....................23, 30

**Page(s)**

*Furnari v. United States Parole Commission*,
531 F.3d 241 (3d Cir. 2008) ....................34

*Garcia v. Neagle*,
660 F.2d 983 (4th Cir. 1981) ....................35

*Glumb v. Honstead*,
891 F.2d 872 (11th Cir. 1990) (per curiam) ....................34

*Greenholtz v. Inmates of the Nebraska Penal & Correctional Complex*,
442 U.S. 1 (1979)....................37

*Heck v. Humphrey*,
512 U.S. 477 (1994)....................27, 28, 29

*Hill v. McDonough*,
547 U.S. 573 (2006)....................27

*Holland as Trustee of the UMWA 1992 Benefit Plan v. Arch Coal, Inc.*,
947 F.3d 812 (D.C. Cir. 2020)....................40

*Howard v. Caulfield*,
765 F.3d 1 (D.C. Cir. 2014)....................6, 22

*International Union, United Mine Workers v. United States Department of Labor*,
358 F.3d 40 (D.C. Cir. 2004)....................51

*Jankovic v. International Crisis Group*,
494 F.3d 1080 (D.C. Cir. 2007)....................5

*Johnson v. District of Columbia*,
927 F.3d 539 (D.C. Cir. 2019)....................6, 35

*Jones v. U.S. Bureau of Prisons*,
903 F.2d 1178 (8th Cir. 1990) ....................35

*Kennedy v. Allera*,
612 F.3d 261 (4th Cir. 2010) ....................35

**Page(s)**

*Langella v. Anderson*,
612 F.3d 938 (8th Cir. 2010) ....................................................34, 35

*Maddox v. United States Parole Commission*,
821 F.2d 997 (5th Cir. 1987) ....................................................34

*Maleng v. Cook*,
490 U.S. 488 (1989)....................................................31

*Marshall v. Lansing*,
839 F.2d 933 (3d Cir. 1988) ....................................................48

*Monk v. Secretary of the Navy*,
793 F.2d 364 (D.C. Cir. 1986)....................................................24, 25, 31, 32

*Moreno-Morales v. United States Parole Commission*,
141 F.3d 1149, 1998 WL 124718 (1st Cir. 1998) ....................................................34

**Muhammad v. Close*,
540 U.S. 749 (2004)....................................................19, 27, 29

*Nelson v. Campbell*,
541 U.S. 637 (2004)....................................................27, 28

**Preiser v. Rodriguez*,
411 U.S. 475 (1973)....................................................27, 28

**Ramsey v. United States Parole Commission*,
840 F.3d 853 (D.C. Cir. 2016)....................................................20, 26

*Rasul v. Bush*,
542 U.S. 466 (2004)....................................................30

*Rumsfeld v. Padilla*,
542 U.S. 426 (2004)....................................................25

*Securities & Exchange Commission v. Chenery Corp.*,
318 U.S. 80 (1943)....................................................49

*Securities & Exchange Commission v. Chenery Corp.*,
332 U.S. 194 (1947)....................................................49

**Page(s)**

**Skinner v. Switzer*,
562 U.S. 521 (2011)....................27, 28, 29

**Skinner v. United States Department of Justice*,
584 F.3d 1093 (D.C. Cir. 2009)....................29, 32

*Slader v. Pitzer*,
107 F.3d 1243 (7th Cir. 1997)....................34

*Strickler v. Greene*,
527 U.S. 263 (1999)....................49

*Strike 3 Holdings, LLC v. Doe*,
964 F.3d 1203 (D.C. Cir. 2020)....................5

*Teagan v. City of McDonough*,
949 F.3d 670 (11th Cir. 2020)....................30

*United States v. Johnson*,
685 F.3d 660 (7th Cir. 2012)....................46

*United States v. Long*,
No. 20-3064, 2021 WL 1972245 (D.C. Cir. May 18, 2021)....................43

*United States v. Mead Corp.*,
533 U.S. 218 (2001)....................40

*United States v. Palmer*,
296 F.3d 1135 (D.C. Cir. 2002)....................24

*Walker v. Prisoner Review Board*,
694 F.2d 499 (7th Cir. 1982)....................38

*Wallace v. Christensen*,
802 F.2d 1539 (9th Cir. 1986)....................35

*Wilkinson v. Dotson*,
544 U.S. 74 (2005)....................22, 27

*Williams Gas Processing-Gulf Coast Co. v. Federal Energy Regulatory Commission*,
475 F.3d 319 (D.C. Cir. 2006)....................50

**Page(s)**

*Wolff v. McDonnell*,
418 U.S. 539 (1974)....................27

*Zannino v. Arnold*,
531 F.2d 687 (3d Cir. 1976)....................34

## STATUTES AND REGULATIONS

18 U.S.C. § 34 (1976)....................44

18 U.S.C. § 351 (1976)....................44

18 U.S.C. § 794 (1976)....................44

18 U.S.C. § 1201 (1976)....................44

18 U.S.C. § 2031 (1976)....................44

18 U.S.C. § 4203(a)(1)....................40

18 U.S.C. § 4205(a)....................9, 41, 44

18 U.S.C. § 4206(a)....................9, 39, 43

18 U.S.C. § 4206(b)....................48

18 U.S.C. § 4206(d)....................1, 4, 11, 20, 36

18 U.S.C. § 4208(a)....................9

18 U.S.C. § 4208(h)....................14

28 U.S.C. § 1291....................4

28 U.S.C. § 1331....................4

28 U.S.C. § 2241....................4

28 U.S.C. § 2241(a)....................25

28 U.S.C. § 2241(c)....................31

28 U.S.C. § 2242....................25

**Page(s)**

28 U.S.C. § 2244(b) ....................28

42 U.S.C. § 1982 ....................19

42 U.S.C. § 1983 ....................27

Pub. L. No. 94-233, 90 Stat. 219 (1976)....................38

Pub. L. No. 116-159, 134 Stat. 709 (2020)....................6

28 C.F.R. § 2.1(c)....................13

28 C.F.R. § 2.14(a)....................14

28 C.F.R. § 2.17 ....................13

28 C.F.R. § 2.27 ....................13

28 C.F.R. § 2.32(a)(1) ....................47

28 C.F.R. § 2.53 ....................39

28 C.F.R. § 2.53(a)....................21, 39

Cal. Code Regs. tit. 15, § 3371.1(c)(2) ....................48

Cal. Penal Code § 3046(a)(1)....................48

**OTHER AUTHORITIES**

41 Fed. Reg. 19,326 (May 12, 1976) ....................36

*Black's Law Dictionary* (11th ed. 2019)....................38

D.C. Cir. R. 28(a)(5) ....................5

Fed. R. App. P. 4(a)(1)(B) ....................4

Fed. R. App. P. 28(f)....................5

Federal Bureau of Prisons, *FCI Hazelton*, https://www.bop.gov/locations/institutions/haf/ (last visited May 30, 2021) ....................6

**Page(s)**

Federal Bureau of Prisons, *Find an Inmate*, https://www.bop.gov/inmateloc/ (last visited May 30, 2021) ..............................6

*Federal Habeas Manual* § 1:29: Section 2241 (May 2021 update, Westlaw) ....................................................................................23

Marie Gottschalk, *Sentenced to Life: Penal Reform and the Most Severe Sanctions*, 9 Ann. Rev. L. & Soc. Sci. 353 (2013) ................................46

H.R. Rep. No. 94-838 (1976)..........................................................................38, 43

Jalila Jefferson-Bullock, *Quelling the Silver Tsunami: Compassionate Release of Elderly Offenders*, 79 Ohio St. L.J. 937 (2018) ...............................45

Marc Mauer, *Long-Term Sentences: Time to Reconsider the Scale of Punishment*, The Sentencing Project (Nov. 5, 2018), https://www.sentencingproject.org/publications/-long-term-sentences-time-reconsider-scale-punishment/ ..................................................45

Daniel O'Connell et. al., *Violent Offending, Desistance, and Recidivism*, 103 Marq. L. Rev. 983 (2020) ......................................................45

S. Rep. No. 94-369 (1975) ..........................................................................38, 48

U.S. Sentencing Commission, *The Effects of Aging on Recidivism Among Federal Offenders* (Dec. 2017), https://www.ussc.gov/sites/default/files/pdf/research-and-publications/research-publications/2017/20171207_Recidivism-Age.pdf.........................................................................................44, 47

Robert Weisberg et al., *Life In Limbo: An Examination of Parole Release for Prisoners Serving Life Sentences with the Possibility of Parole in California* (Sept. 2011), https://law.stanford.edu/wp-content/uploads/sites/default/files/publication/259833/doc/slspublic/SCJC%20Lifer%20Parole%20Release%20Sept%202011.pdf ..........................................................................................45, 46

## GLOSSARY OF ACRONYMS AND ABBREVIATIONS

| | |
|---|---|
| Commission | United States Parole Commission |
| NOA | Notice of Action issued by the Commission on July 25, 2016 (JA13) |
| NOA Appeal | Notice of Action on Appeal issued by the Commission on November 25, 2016 (JA14) |

## INTRODUCTION

In 1979, when he was twenty-five years old, Plaintiff-Appellant Artie Dufur killed a federal law enforcement officer. Before Dufur was sentenced on those charges, he attempted to escape from the local county jail where he was being detained. The attempt was unsuccessful, and Dufur was given a sentence of life imprisonment with the possibility of parole for his crimes. He has been serving that sentence in various federal institutions in the decades since.

In 2016, Dufur—then sixty-two years old—became eligible for mandatory parole under 18 U.S.C. § 4206(d). That statute *requires* the U.S. Parole Commission to release a federal prisoner who has served thirty years of a life sentence unless the Commission finds that one of two enumerated circumstances is present: that the prisoner has "seriously or frequently violated institution rules and regulations," or that "there is a reasonable probability that he will commit any Federal, State, or local crime" if released. 18 U.S.C. § 4206(d). The Commission found that both exceptions were met in Dufur's case and denied him mandatory parole. But the Commission did not base those findings on Dufur's conduct while serving his sentence in federal prison. Nor could it have. Dufur had never once been disciplined for an act of violence during the entirety of his thirty-seven years of federal incarceration. And he had kept a record free of even minor infractions for the previous fifteen years.

Instead, the Commission reached those determinations *entirely* based on Dufur's conduct in 1979 (and earlier), before he had even received a federal sentence. The Commission deemed Dufur's 1979 escape attempt from the county jail a "serious" violation of "institution rules" precluding his federal parole. And it additionally reasoned that Dufur's original crimes of conviction—as well as another state-law crime Dufur committed as a teenager—demonstrated that Dufur "remain[s] a threat to the community if . . . released from custody" as a senior citizen. JA13 (Compl. Ex. 1, Notice of Action) ("NOA").

Those patently arbitrary determinations exceeded the scope of the Commission's statutory discretion under 18 U.S.C. § 4206(d) and violated Dufur's due process rights. The Commission's unduly expansive interpretation of the "institution rules" exception deliberately ignores statutory context and would lead to manifestly absurd results. The exception plainly applies only to a prisoner's violation of the rules of the "institution" *in which he is serving his federal sentence*—as the Commission's own implementing regulation recognizes. It is incompatible with the parole regime's rehabilitative purpose to deny a prisoner parole based on an incident that took place before he ever set foot into a federal institution to begin paying his debt to society for a federal offense. And the Commission's determination that it is still "reasonably probable" that Dufur will commit a violent crime upon release—based solely on the nature of the crimes he committed more

than four decades ago, when he was in his teens and twenties—is equally infirm. That conclusion flies in the face of the overwhelming social-science evidence that recidivism declines with age, even among those serving lengthy sentences for grave crimes. The Commission also neglected to account for the fact that Dufur will not actually be released into the community, but instead sent to California to serve an outstanding sentence of imprisonment there.

This Court has also asked appointed amicus to address whether the district court had subject-matter jurisdiction over Dufur's action challenging his parole denial, even though Dufur did not style his suit against the Commission as a habeas petition under 28 U.S.C. § 2241. The answer is yes. The district court had the authority to recharacterize Dufur's complaint as a habeas petition to comply with the common-law "habeas-channeling" rule. And although habeas petitions must usually name the prisoner's immediate custodian and be filed in the prisoner's district of confinement, the Commission unequivocally waived those non-jurisdictional procedural rules here. In any event, the habeas-channeling rule is also not a limit on the subject-matter jurisdiction of the federal courts, so the district court had authority to reach the merits regardless.

For those reasons, Dufur has stated a claim against the Commission for which relief may be granted. The district court's judgment dismissing Dufur's action must be reversed and his case remanded for further proceedings.

## JURISDICTIONAL STATEMENT

The district court had jurisdiction under 28 U.S.C. § 1331, because Dufur's challenge to the Commission's decision to deny him parole arises under federal law. In addition, the district court had jurisdiction under 28 U.S.C. § 2241, because Dufur's challenge to his parole denial is cognizable in habeas. *See Bailey v. Fulwood*, 793 F.3d 127, 135-36 (D.C. Cir. 2015). As discussed *infra* at 22-32, Dufur's failure to style his suit as a habeas action did not deprive the district court of subject-matter jurisdiction over his claims.

On May 24, 2018, the district court entered a memorandum opinion and a final order dismissing all of Dufur's claims. JA57 (Op.); JA58 (Order). On July 20, 2018, Dufur filed a timely notice of appeal seeking review of the May 24, 2018 judgment. JA3 (district court docket entry for Dkt. No. 22); *see* Fed. R. App. P. 4(a)(1)(B). This Court has jurisdiction under 28 U.S.C. § 1291.

## STATEMENT OF ISSUES

1. Whether the district court had subject-matter jurisdiction over Dufur's suit, notwithstanding Dufur's failure to style his action as a habeas petition under 28 U.S.C. § 2241.

2. Whether the Commission exceeded the scope of its statutory discretion or violated the Due Process Clause of the Fifth Amendment in denying Dufur mandatory parole under 18 U.S.C. § 4206(d).

## STATUTES AND REGULATIONS

Applicable statutes and regulations are contained in the separate addendum filed herewith at ADD1-2. *See* Fed. R. App. P. 28(f); D.C. Cir. R. 28(a)(5).

## STATEMENT OF THE CASE

Because Dufur's challenge to the denial of his parole was dismissed by the district court pursuant to the Commission's motion under Federal Rule of Civil Procedure 12(b)(6), the current record includes the facts alleged by Dufur in his complaint, documents attached to or incorporated by reference in his complaint, and matters subject to judicial notice. *See Equal Emp. Opportunity Comm'n v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621, 624 (D.C. Cir. 1997). This Court may take judicial notice of other court proceedings and documents filed in other court proceedings, including official Commission records of Dufur's parole proceedings that the Commission filed in the record of Dufur's other pending federal court action (which challenges a separate parole proceeding in 2018). *See Strike 3 Holdings, LLC v. Doe*, 964 F.3d 1203, 1213 (D.C. Cir. 2020) ("[C]ourts may properly take judicial notice of proceedings and filings in other courts . . . ."); *Jankovic v. Int'l Crisis Grp.*, 494 F.3d 1080, 1088 (D.C. Cir. 2007) (taking judicial notice of exhibits in the record of another court's proceedings in reviewing an appeal from a motion to dismiss); *Dupree v. Jefferson*, 666 F.2d 606, 608 n.1 (D.C. Cir. 1981) (same). In addition, because Dufur brought his action *pro se*, this Court considers the facts

alleged in the complaint "in light of all filings, including filings responsive to a motion to dismiss." *Johnson v. District of Columbia*, 927 F.3d 539, 541 (D.C. Cir. 2019) (citation omitted). The facts alleged must be taken as true and Dufur must be granted "the benefit of all inferences that can be derived from" them. *Id.* (citation omitted).

### A. Dufur's State And Federal Criminal History

Artie Dufur is a sixty-seven-year-old prisoner serving a federal sentence for crimes he committed when he was twenty-five years old in 1979. Because his crimes were committed before November 1, 1987, he remains eligible for parole under the provisions of the Parole Commission and Reorganization Act of 1976. *See Howard v. Caulfield*, 765 F.3d 1, 2 n.1 (D.C. Cir. 2014); Pub. L. No. 116-159, § 4202, 134 Stat. 709, 741 (2020) (extending the parole regime as applied to those offenders through 2022). At the time of the 2016 parole proceeding under review and when Dufur filed the present action, he was confined at U.S. Penitentiary Hazelton in Bruceton Mills, West Virginia. JA6 (Compl. ¶ 2); JA13 (NOA).[1]

---

[1] Dufur has since left USP Hazelton and is currently imprisoned at Federal Correctional Institution Hazelton, a medium-security facility. *See* Federal Bureau of Prisons, *Find an Inmate*, https://www.bop.gov/inmateloc/ (last visited May 30, 2021) (search result under "Find By Name" for "Artie Dufur"); Federal Bureau of Prisons, *FCI Hazelton*, https://www.bop.gov/locations/institutions/haf/ (last visited May 30, 2021).

In 1972, when Dufur was eighteen, he committed two murders in California. *See* JA15 (Compl. Ex. 3); *Dufur* 18-2156, Dkt. No. 13-3 at 16-17 (D.D.C. May 20, 2019).[2] He was convicted in California state court and received a life sentence. JA15 (Compl. Ex. 3). In 1977, after serving five years of that sentence, Dufur escaped from California state prison and remained at large for about two years. JA13 (NOA); *Dufur* 18-2156, Dkt. No. 13-3 at 26. On May 24, 1979, Dufur attempted to enter the United States from Canada at a checkpoint in Lynden, Washington, accompanied by his wife. JA6 (Compl. ¶ 4). Customs officers asked the couple to exit their vehicle and come inside the Customs Office while the officers performed a secondary inspection; when the officers told Dufur that they were going to search his person, he and his wife attempted to leave. JA6-7 (*id.*). U.S. Customs Inspector Kenneth Ward drew his weapon, and Dufur drew his own pistol and shot Inspector Ward, killing him. JA7 (*id.*). Dufur and his wife fled the scene but were arrested within 24 hours. *Id.*

While awaiting trial, Dufur was detained at the local jail in King County, Washington. *See* JA20 (Mot. to Dismiss Ex. A). On September 17, 1979, Dufur was convicted in the U.S. District Court for the Western District of Washington on

---

[2] Citations to "*Dufur* 18-2156" refer to documents filed in *Dufur v. U.S. Parole Commission*, No. 1:18-cv-2156 (D.D.C.). Citations to "D.D.C. Dkt. No." refer to documents filed below in No. 1:17-cv-00677 (D.D.C.) that are not included in the Joint Appendix filed herewith. Page references for "*Dufur* 18-2156, Dkt. No. 13-3" refer to the PDF pagination as listed in the Pacer header.

charges of first degree murder and armed assault of a federal officer. JA34 (Op.); JA7 (Compl. ¶ 5). On October 14, 1979—before Dufur was sentenced on his federal convictions—Dufur unsuccessfully attempted to escape from the King County jail with other prisoners. JA14 (Compl. Ex. 2, Notice of Action on Appeal) ("NOA Appeal"); JA21 (Mot. to Dismiss Ex. A). Other prisoners fired upon police officers during the escape attempt; one officer was injured, and another prisoner was killed. JA13 (NOA); JA15 (Compl. Ex. 3). On October 17, 1979, Dufur pleaded guilty to an additional federal charge based on that escape attempt. JA25 (Mot. to Dismiss Ex. A).

That same day, the federal district court sentenced Dufur for all three of his federal offenses. Dufur received sentences of ten years to life on the murder count, ten years on the assault count, and one year on the escape-attempt count. JA7 (Compl. ¶ 5); JA17 (Compl. Ex. 4); JA25-26 (Mot. to Dismiss Ex. A). All of Dufur's sentences were with the possibility of parole. *See* JA7 (Compl. ¶ 5).

Since October 1979, Dufur has been serving his federal sentences in various federal institutions. JA6 (Compl. ¶ 2). He has never been returned to California to fulfill the remainder of his life sentence for his 1972 state-law crimes. California has lodged a detainer against Dufur, and Commission records indicate that California still considers him to be on "[e]scape status." JA26 (Mot. to Dismiss Ex. A); *Dufur* 18-2156, Dkt. No. 13-3 at 19.

### B. Dufur's Prior Parole Proceedings

In 1989, after serving ten years of his federal sentence, Dufur first became eligible for parole. *See* 18 U.S.C. §§ 4205(a), 4208(a).[3] The Commission conducted an initial parole hearing, and on September 12, 1989, the Commission denied Dufur parole. *Dufur* 18-2156, Dkt. 13-3 at 14; *see also* 18 U.S.C. § 4206(a) (setting forth criteria for discretionary parole). The Commission calculated Dufur's guideline range at 300+ months (meaning, it determined that Dufur should serve 300 or more months of his life sentence before release). *Dufur* 18-2156, Dkt. 13-3 at 11. To reach that figure, the Commission added over 100 months for Dufur's October 1979 King County escape attempt on the theory that the escape attempt constituted "new criminal behavior"—even though that attempt occurred before Dufur's sentencing. *See Dufur v. Sullivan*, 46 F.3d 1140, 1995 WL 37299, at *1 (9th Cir. 1995) (table). Dufur sought habeas relief, and in 1991, a district court in the Central District of California granted his petition on the basis that the Commission was wrong to characterize the King County escape attempt as "new criminal behavior" under the relevant Commission regulation. *See id.*

To comply with that habeas ruling, the Commission conducted a new initial parole hearing and issued another denial decision. *Id.* This time, the Commission

---

[3] At the time, Dufur was imprisoned at the U.S. Penitentiary in Lompoc, California. *Dufur* 18-2156, Dkt. No. 13-3 at 10.

found that Dufur's conduct during the 1979 escape attempt constituted "continued criminal behavior in aggravation of his original offense" and added 120 months to his guideline range on that basis, producing a similar range. *Id.* The Commission also pushed back the date of Dufur's fifteen-year parole reconsideration hearing—previously scheduled for July 2004—to July 2006. *Id.* at *2. In a second habeas action, Dufur successfully challenged the Commission's decision to delay the reconsideration hearing as the product of the Commission's vindictive motive. *See id.*; Judgment and Order, *Dufur v. Sullivan*, No. 2:92-cv-4225 (C.D. Cal. Jan. 9, 1996), Dkt. No. 30 (docket entry).

At Dufur's reinstated July 2004 reconsideration hearing—after he had served 301 months (twenty-five years) in prison—the Commission again considered whether to grant him discretionary parole under 18 U.S.C. § 4206(a). The hearing summary reflects that Dufur "accepted full responsibility for the 3 murders that he committed in his life" and also "t[ook] responsibility for the death of the inmate" during the King County escape attempt. *Dufur* 18-2156, Dkt. No. 13-3 at 17. Dufur testified that he "has great regret for all of his actions" and "is now a changed man." *Id.* The hearing examiner also observed that Dufur "has done well over the past few decades," noting testimony from a prison official that Dufur was "his best student" in a cognitive-behavioral program (the "CODE program"), that Dufur "always conducts himself respectfully," and that he "has the respect of staff as well as his

peers." JA10 (Compl. ¶ 9 n.1); *Dufur* 18-2156, Dkt. No. 13-3 at 17, 19. The hearing examiner did note that Dufur had a 2001 infraction for possession of a weapon, but considered that "one incident" to be "mitigated" by the prison official's testimony that he and other staff members believed that Dufur was wrongly blamed. JA10 (Compl. ¶ 9 n.1); *Dufur* 18-2156, Dkt. No. 13-3 at 17-19. The hearing examiner nonetheless recommended that Dufur be denied parole, believing that to be the Commission's "intent" based on the nature of his underlying offenses. JA17 (Compl. Ex. 4); *see also Dufur* 18-2156, Dkt. No. 13-3 at 19-20. The Commission adopted that recommendation. JA15-16 (Compl. Ex. 3).

### C. Dufur's 2016 Mandatory Parole Hearing

On September 24, 2016, after serving thirty-seven years of his life sentence, Dufur became eligible for mandatory parole under 18 U.S.C. § 4206(d). *See* JA17 (Compl. Ex. 4). Under Section 4206(d), a prisoner who has served thirty years of a life sentence "shall be released" unless the Commission finds that either of two exceptions applies: "that that he has seriously or frequently violated institution rules and regulations or that there is a reasonable probability that he will commit any Federal, State, or local crime." 18 U.S.C. § 4206(d).

At his mandatory-parole hearing on May 25, 2016, Dufur—now sixty-two years old—again expressed his sorrow and shame for his crimes in his youth, told the Commission that he took full responsibility for those offenses, including the

1979 King County escape attempt, and asked for forgiveness. *Dufur* 18-2156, Dkt. No. 13-3 at 25-27. Dufur explained that he has acquired two college degrees while in prison and was "continuing to try to improve himself daily." *Id.* at 26-27. He also shared that he had served as a mentor to other inmates in the CODE program and the Challenge Program (another cognitive-behavioral program for male inmates), served as a computer tutor, and helped other inmates earn their GEDs. *Id.* at 27; *see also id.* at 28 (hearing examiner stating that Dufur "is noted to have participated in numerous programs throughout his prison confinement"). Dufur further acknowledged that, due to his outstanding California life sentence, "he knows he is not going to be released to the Community no time soon" and will "still have to go back to the State of California" to serve time in prison there. *Id.* at 27. Dufur's case manager also testified that Dufur "has not been a management issue," that Dufur "has always been very respectful," and that he "has no issues or concerns with Mr. Dufur." *Id.* at 26.

In a Notice of Action dated July 25, 2016, the Commission denied Dufur release on mandatory parole. JA13 (NOA). The Commission determined that "there is a reasonable probability that you will commit any Federal, State or local crime," explaining to Dufur:

> Your [*sic*] are still viewed to be a high risk for violent crime on the basis of the evidence that while serving a prison sentence you coordinated the Escape from prison custody for yourself and other inmates which resulted in the death of an inmate and injury to a law

> enforcement officer. In addition, your current federal offense is for murdering of [*sic*] a US Border Patrol Agent and that offense took place 2 years after you escaped from California State Custody while serving another sentence for murder.

*Id.* Although the Commission noted Dufur's completion of "substantial program[m]ing" while in prison—and did not rely on any of Dufur's conduct while he had been serving his federal sentences after October 1979—it concluded that "the nature and seriousness of your repetitive violent criminal behavior indicates . . . that you remain a threat to the community if you are released from custody." *Id.*

Dufur appealed the denial to the Commission's National Appeals Board, which affirmed in a "final" decision on November 25, 2016. NOA Appeal (JA14).[4] In its Notice of Action on Appeal, the Commission acknowledged that Section 4206(d) establishes a "presumption of mandatory parole release." *Id.* But the Commission noted its previous finding that there is "a reasonable probability that you will commit a Federal, State, or local crime if released." *Id.* And the Commission supplemented its initial decision with a second ground for the denial:

---

[4] Because Dufur's case is an "original jurisdiction" case, the full Commission (as opposed to a single regional commissioner) was required to vote on the initial decision to deny Dufur mandatory parole in the first instance, and Dufur's subsequent appeal therefore should have been treated as a petition for reconsideration. *See* JA13 (NOA); 28 C.F.R. §§ 2.17, 2.27. But the Notice of Action on Appeal states that "[t]he National Appeals Board" acted on the appeal—not the full Commission. JA14 (NOA Appeal); *see also* 28 C.F.R. § 2.1(c) (defining the "National Appeals Board" as a subset of the full Commission). It is thus unclear from the existing record whether the full Commission did in fact reconsider Dufur's decision.

it told Dufur that "the Commission could have found that you seriously violated institution rules, by escaping on October 14, 1979." *Id.*[5]

### D. District Court Proceedings

Dufur, proceeding *pro se*, filed a civil action against the Commission in the District Court for the District of Columbia challenging his mandatory-parole denial. JA5 (Compl.). Dufur invoked the district court's federal-question jurisdiction under 28 U.S.C. § 1331 and other provisions. JA6 (Compl. ¶ 1). Dufur argued that the Commission violated the Constitution, the federal parole statutes, and Commission regulations in conducting his 2016 hearing and denying him parole. JA11 (Compl. ¶ 11). As most relevant to the arguments in this amicus brief, Dufur argued that the Commission violated 18 U.S.C. § 4206(d) and the Due Process Clause of the Fifth Amendment because it denied parole on the basis of his conduct *before* he started serving his federal sentence. Pltf.'s Mem. in Opp'n to Deft.'s Mot. to Dismiss 2-5, 8-10, D.D.C. Dkt. No. 11 ("Opp'n to Mot. to Dismiss"). Dufur also argued that the

---

[5] In 2018, Dufur had a two-year interim parole hearing. *See* 18 U.S.C. § 4208(h); 28 C.F.R. § 2.14(a). The Commission found that there was no basis to change its earlier determination that Dufur should not receive mandatory parole. *See Dufur v. U.S. Parole Comm'n*, No. 18-cv-2156, 2020 WL 2198049, at *2 (D.D.C. May 6, 2020). Dufur challenged that 2018 determination in a separate action in the district court; on May 6, 2020, the district court granted the Commission's motion to dismiss and entered final judgment. *Id.* at *6; *see also Dufur* 18-2156 Order, Dkt. No. 31 (D.D.C. Mar. 24. 2021) (denying reconsideration). Dufur's appeal of the district court's judgment in that separate action is currently pending before this Court in No. 21-5089.

Commission failed to take account of his California detainer. JA6 (Compl. ¶ 3); Opp'n to Mot. to Dismiss 3, 5. As a remedy, Dufur asked for a new hearing or any further relief that the district court determined appropriate. JA11-12 (Compl.).

The Commission moved to dismiss Dufur's action under Federal Rule of Civil Procedure 12(b)(6). JA37 (Op.). The Commission argued that Dufur's complaint failed to state a claim for relief because the Commission had not violated any provision of law in conducting his hearing or denying him mandatory parole. *Id.* The Commission did not argue, however, that Dufur's action should have been brought as a habeas petition naming Dufur's immediate custodian (the warden of USP Hazelton) in the Northern District of West Virginia. JA40 (Op.). Indeed, the Commission specifically disavowed any intent to seek the dismissal of Dufur's action for improper venue. *See* JA41 (Op.) ("[T]he agency is adamant in declaring that it has not moved to dismiss for improper venue.").

On May 24, 2018, the district court granted the Commission's motion to dismiss. JA57 (Op.). The district court first considered whether Dufur's claims "sound in habeas and, if so, whether and how that affects the Court's authority to adjudicate them." JA38 (Op.). The court observed that some of Dufur's claims appeared to sound in habeas—because "success on the merits" of those claims would "necessarily imply the invalidity of [Dufur's] confinement or shorten its duration"—

but that some of Dufur's claims did not. JA39 (Op.) (quoting *Davis v. United States Sentencing Comm'n*, 716 F.3d 660, 666 (D.C. Cir. 2013)).

But the district court determined that it did not need to definitively settle the matter, because the Commission had forfeited the "[habeas] channeling defense" and had "categorically waive[d]" the right to seek dismissal due to improper venue. JA40-41 (Op.). The court noted that "the habeas channeling rule is not jurisdictional in the sense that the Court has a duty to consider the defense *sua sponte*." JA40 (Op. 9). Rather, the court explained, "the rule is a prudential one, which was established by the courts to ensure that prisoners do not evade the procedural requirements that Congress has enacted to govern habeas proceedings." *Id.*

And those "procedural requirements" of habeas, the court further concluded, "are either inapplicable in this case or are themselves subject to waiver"—such that they do not "limit the [court's] subject matter jurisdiction." *Id.* The court explained that although Dufur had sued the Commission and not the warden of USP Hazelton, this was an issue of personal jurisdiction subject to waiver by the government. *Id.* The court also noted that the habeas venue rule is likewise waivable. JA40-41 (Op).

Turning to the merits, the district court found that none of Dufur's allegations stated a plausible claim for relief, including his claim that the Commission acted unlawfully in denying him mandatory parole under 18 U.S.C. § 4206(d). The district court evaluated that claim under two frameworks. JA45-47, 55-57 (Op.).

Recognizing that habeas provides a "vehicle" for courts to review "the substance" of parole determinations to some extent, the court reasoned that if it "construe[d] Dufur's complaint as a habeas petition," it could review the reasoning behind the Commission's decision "under a highly deferential standard." JA45-46 (Op.) (citing cases for the standard of review of parole determinations on habeas). But the court found that Dufur's challenge to the Commission's determinations failed. It reasoned that "[n]othing in § 4206(d) . . . prevents" the Commission from considering Dufur's underlying offenses or his 1979 pre-sentencing escape attempt to decide "whether Dufur 'seriously or frequently violated institution rules and regulations or' is 'reasonabl[y]' likely to 'commit any Federal, State, or local crime' if paroled." JA46 (Op.) (citation omitted). The district court was also not "persuaded" that the Commission failed to account for Dufur's California detainer and the fact that he would not actually be released into the community at large; the court stated that Dufur's "history demonstrates that an individual serving a sentence under state law is fully capable of committing a further crime." JA46-47 (Op.).

The district court likewise determined that the Commission's mandatory-parole denial did not violate the equal protection component of the Due Process Clause. JA56-57 (Op.). While recognizing that the Constitution requires the Commission to apply the parole statutes "in a rational and nonarbitrary way," JA56 (Op.) (citation omitted), the court found that the Commission had a sufficiently

rational basis to deny Dufur parole. Pointing to Dufur's "three murders and two prison breaks," the district court decided that the Commission's determination that Dufur "is reasonably likely to commit a future crime" was supported. JA56-57 (Op.).

On July 25, 2018, the district court denied Dufur's motion to alter or amend the judgment. JA3 (Docket for D.D.C. No. 17-677).

**E. Proceedings On Appeal**

Still proceeding *pro se*, Dufur appealed to this Court. The Commission sought summary affirmance of the district court's judgment, telling the Court that "Dufur's claims rest on his misunderstanding of 18 U.S.C. § 4206(d)." Appellee's Mot. for Summ. Affirmance 1 (Nov. 30, 2018), Doc. No. 1762526 ("Summ. Affirmance Mot.") . The Commission did not argue that Dufur's action should be dismissed based on the habeas-channeling rule or dispute the district court's assessment that it had waived that issue. *See generally id.*; Reply to Appellant's Opp'n to Summ. Affirmance Mot. (Sept. 4, 2020), Doc. No. 1860006.

This Court denied the Commission's request for summary affirmance. Order 1 (Feb. 5, 2021), Doc. No. 1883934 (per curiam) ("Summ. Affirmance Order"). This Court also appointed the undersigned as amicus curiae to present arguments in support of Dufur's position on appeal. *Id.*

## SUMMARY OF ARGUMENT

The district court wrongly determined that Dufur could not state a claim for relief based on the Commission's denial of mandatory parole under 18 U.S.C. § 4206(d). The judgment below must be reversed, and Dufur's action should be allowed to proceed.

I. As an initial matter, the district court had the authority to adjudicate Dufur's suit. The Commission waived any argument that the habeas-channeling rule—which requires prisoners to bring certain claims for relief in a habeas action, as opposed to some other kind of civil action—obligated Dufur to bring his claims in a habeas petition under 28 U.S.C. § 2241. In its summary affirmance order, this Court raised the question whether a prisoner's compliance with the habeas-channeling rule is jurisdictional. It is not. The Supreme Court has never characterized the rule as an issue of the federal courts' subject-matter jurisdiction. Rather, the Court's decisions have always framed the inquiry in terms of whether the prisoner's claim at issue is cognizable under the *cause of action* at 42 U.S.C. § 1982. And in one of those decisions, *Muhammad v. Close*, the Court held that the habeas-channeling rule could be waived. 540 U.S. 749, 755 (2004) (per curiam).

But even if the habeas-channeling issue is jurisdictional, this Court may find Dufur in compliance with the rule here. In adjudicating Dufur's claim, the district court properly exercised its authority to recharacterize Dufur's *pro se* civil suit as a

habeas action. JA45-46 (Op.); *see also Castro v. United States*, 540 U.S. 375, 377, 381-82 (2003). And although Dufur did not file his action against his immediate custodian in his district of confinement, this Court has squarely held that both of those habeas procedural requirements do not affect the district court's subject-matter jurisdiction and are subject to waiver. *See Ramsey v. United States Parole Comm'n*, 840 F.3d 853, 859 n.2 (D.C. Cir. 2016).

II. On the merits, Dufur has stated a claim for relief. Because Dufur has served over thirty years of his life sentence, the Commission *must* release him on parole unless it finds that he has "seriously or frequently violated institution rules" or "there is a reasonable probability that he will commit" another crime. 18 U.S.C. § 4206(d). The Commission purported to find both exceptions met here. But its analysis exceeded its statutory authority and was otherwise so irrational and fundamentally unfair as to violate Dufur's due process rights.

It is clear from statutory context that Section 4206(d)'s reference to "institution rules" is to *the institution where the prisoner is serving his federal sentence*. It does not encompass the rules of any institution where the prisoner happened to have been detained in the distant past. The Commission's determination that this exception was met on the basis of Dufur's *pre-sentencing* escape attempt from a county jail contravenes the only natural reading of the text. It also runs headlong into the Commission's own implementing regulation—which

interprets Section 4206(d) to refer only to rules of "the institution *in which* [the prisoner] *is confined*." 28 C.F.R. § 2.53(a) (emphasis added). That regulation correctly interprets the statute, and is entitled to *Chevron* deference in any event.

The Commission's separate determination that it is "reasonably probable" that Dufur will commit another violent crime upon release is also wholly unsound. Dufur has never once been disciplined for an act of violence during the thirty-seven years of his federal incarceration. Instead, the Commission reached its finding that Dufur is at risk of recidivism based on the nature of his underlying offenses and his prior criminal history. But the Commission ignored the overwhelming evidence that Dufur—now sixty-seven years old—is substantially less likely to commit another violent crime as a senior citizen. The Commission also inexplicably failed to take account of the fact that Dufur will not actually be released into the community, but instead paroled to serve his outstanding California sentence in state prison.

Finally, because the Commission's final decision rested on the presence of *both* statutory exceptions—without specifying that it would have denied mandatory parole had only one circumstance been present—a remand for a new determination would be necessary if the Court were to find that the Commission's reliance on one of the exceptions was invalid. *See Casino Airlines, Inc. v. Nat'l Transp. Safety Bd.*, 439 F.3d 715, 717-18 (D.C. Cir. 2006).

## STANDARD OF REVIEW

The Court reviews de novo the dismissal of a compliant for failure to state a claim. *Daniel v. Fulwood*, 766 F.3d 57, 61 (D.C. Cir. 2014). Likewise, when reviewing the denial of a habeas petition, the Court reviews the district court's legal conclusions de novo. *Howard*, 765 F.3d at 3.

## ARGUMENT

### I. DUFUR'S FAILURE TO STYLE HIS SUIT AS A HABEAS ACTION DID NOT DEPRIVE THE DISTRICT COURT OF SUBJECT-MATTER JURISDICTION

In its order denying summary affirmance, this Court directed the parties and amicus to address "whether the district court properly concluded that the habeas-channeling rule may be forfeited or waived and thus need not be considered *sua sponte*." Summ. Affirmance Order.

The "habeas-channeling rule" refers to a common-law procedural rule requiring prisoners to bring their claim in a habeas petition if that claim lies "at 'the core of habeas.'" *Davis v. U.S. Sentencing Comm'n*, 716 F.3d 660, 666 (D.C. Cir. 2013). Claims at the core of habeas are those that "'necessarily imply the invalidity of [the prisoner's] confinement or [will] shorten its duration.'" *Id.* at 666 (quoting *Wilkinson v. Dotson*, 544 U.S. 74, 82 (2005)). The crux of the Court's question appears to be whether the habeas-channeling rule is a rule of subject-matter jurisdiction—such that, if a prisoner brings claims in a non-habeas civil action that

sound exclusively in habeas, the district court will lack the authority to adjudicate that non-habeas action. If the habeas-channeling rule is jurisdictional in this way, then the district court would have had an obligation to determine *sua sponte* whether Dufur complied with it—an issue the district court instead chose to sidestep, given the Commission's failure to raise it. *See* JA38-41 (Op.); *Fort Bend Cnty. v. Davis*, 139 S. Ct. 1843, 1849 (2019) (explaining that "[c]haracterizing a rule as a limit on subject-matter jurisdiction 'renders it unique in our adversarial system,'" because courts must consider jurisdictional challenges *sua sponte* (citation omitted)).

The bottom line is that the district court had jurisdiction to adjudicate Dufur's suit. And there are two routes to that conclusion. First, even assuming the habeas-channeling rule applies to some or all of Dufur's claims, the district court had the authority to recharacterize Dufur's *pro se* complaint as a habeas petition, and the Commission waived other non-jurisdictional procedural requirements. Second, and in any event, the habeas-channeling rule itself is not jurisdictional.

1. There is no dispute that Dufur's fundamental challenge to his parole denial—that the Commission violated 18 U.S.C. § 4206(d) and the Constitution in denying him mandatory parole—*can* be brought in a habeas petition under 28 U.S.C. § 2241. *See Federal Habeas Manual* § 1:29: Section 2241 (May 2021 update, Westlaw) ("All courts agree that § 2241 is an appropriate vehicle to challenge government action that inevitably affects the duration of the petitioner's custody,

such as . . . a right to release on parole . . . ."); *Bailey v. Fulwood*, 793 F.3d 127, 135-36 (D.C. Cir. 2015); *Chatman-Bey v. Thornburgh*, 864 F.2d 804, 806-08 (D.C. Cir. 1988) (en banc).[6]

And this Court and the Supreme Court have long recognized district courts' inherent authority to "recharacterize" a *pro se* prisoner's civil suit as a habeas action. As the Supreme Court has explained, in appropriate circumstances, federal courts may "ignore the legal label that a *pro se* litigant attaches to a motion and recharacterize the motion in order to place it within a different legal category" in order to "to avoid an unnecessary dismissal" or "create a better correspondence between the substance of a *pro se* motion's claim and its underlying legal basis." *Castro v. United States*, 540 U.S. 375, 377, 381-82 (2003). This recharacterization practice "follows the well-established practice of construing a *pro se* party's pleadings liberally." *United States v. Palmer*, 296 F.3d 1135, 1143-44 (D.C. Cir. 2002).

Notably, this Court has held that this authority can be exercised in cases involving the habeas-channeling rule specifically. In *Monk v. Secretary of the Navy*, the Court concluded that the habeas-channeling rule applied because some of the plaintiff's civil claims collaterally attacked his court-martial conviction. 793 F.2d

[6] Dufur's constitutional challenge could also be brought as a standalone action. *See generally Bailey*, 793 F.3d 127 (adjudicating prisoner's claim against the Commission challenging a parole denial under the Ex Post Facto Clause).

364, 366 (D.C. Cir. 1986). Accordingly, the court held that the plaintiff's action "must be construed as a petition for a writ of habeas corpus," and—having "characterized" the action as a habeas petition—proceeded to apply the relevant habeas rules when assessing the viability of plaintiff's complaint. *Id.* at 366, 368.

So it is clear that if Dufur was *required* to bring his challenge to his parole denial in habeas, the district court possessed the authority to recharacterize his civil complaint as a habeas petition, thereby satisfying that requirement. And that is essentially what the district court did below when it passed upon the merits of Dufur's challenge under the habeas framework. *See* JA45-47 (Op.) ("constru[ing] Dufur's complaint as a habeas petition" and analyzing his Section 4206(d) claim under that standard).

To be sure, habeas petitions come with their own set of procedural requirements beyond just the filing's caption. But the district court correctly concluded that the procedural rules relevant to Dufur's habeas action as a federal prisoner are "themselves subject to waiver." JA40 (Op.). To bring a habeas action under Section 2241, Dufur would ordinarily be required to sue his "immediate custodian" (the warden of USP Hazelton) in the district of his confinement (the Northern District of West Virginia). *See* 28 U.S.C. §§ 2241(a), 2242; *Rumsfeld v. Padilla*, 542 U.S. 426, 434-35, 442 (2004). This Court has squarely held, however, that those requirements go to *personal* jurisdiction and venue, and are accordingly

subject to forfeiture and waiver. *See Ramsey v. U.S. Parole Comm'n*, 840 F.3d 853, 859 n.2 (D.C. Cir. 2016) ("We need not decide whether the Commission is a proper respondent, or the D.C. district court a proper venue, because the Commission 'raised no objections on grounds of venue or personal jurisdiction.'" (citation omitted)); *Chatman-Bey*, 864 F.2d at 813 ("It is, of course, elementary that a defense of improper venue or lack of personal (as opposed to subject matter) jurisdiction is waived unless the defense is asserted . . . ."); *Fletcher v. Reilly*, 433 F.3d 867, 875 (D.C. Cir. 2006). Nor does Dufur's choice of respondent pose any practical obstacle, as there is no question that the named respondent—the Commission—lies within the district court's jurisdiction and is "fully capable of granting the requested relief" to Dufur. JA40 (Op.) (citation omitted); *cf. Fletcher*, 433 F.3d at 875.

As a result, even assuming that Dufur's case was subject to the habeas-channeling rule, his failure to use the "habeas" label on his complaint did not deprive the district court of jurisdiction to resolve his claims on the merits.

2. Dufur's *de facto* compliance obviates the need to decide whether the habeas-channeling rule is jurisdictional. But if the Court were to reach that question, the answer is no. Thus, even if Dufur's civil suit could not be treated as a habeas action, the Commission's failure to raise the habeas-channeling rule means that the district court still properly addressed Dufur's claims.

The habeas-channeling rule derives from a line of Supreme Court cases, beginning with *Preiser v. Rodriguez*, 411 U.S. 475 (1973), where a state prisoner was attempting to obtain some form of relief using the civil-rights cause of action at 42 U.S.C. § 1983.[7] In each case, the Supreme Court "addressed the relationship between § 1983 and the federal habeas statutes" to decide whether the prisoner's claim could be brought under Section 1983, or whether Congress implicitly intended for such a claim to be brought only in habeas—a regime that, among other things, requires state prisoners to first exhaust their state remedies. *Wilkinson*, 544 U.S. at 78-79; *see also id.* at 79 (explaining that *Preiser* had found "an implicit exception from § 1983's otherwise broad scope for actions that lie 'within the core of habeas corpus,'" based on the text of Section 1983 and the habeas statutes, history, and comity (quoting *Preiser*, 411 at 487)).

The Court accordingly framed its analysis in these cases in terms of whether the prisoner's claim was "cognizable" under Section 1983, or whether the claim instead "fall[s] within the implicit habeas exception" to that cause of action. *Wilkinson*, 544 U.S. at 82; *see also, e.g.*, *Skinner v. Switzer*, 562 U.S. 521, 531, 533

---

[7] *See Skinner v. Switzer*, 562 U.S. 521, 524 (2011); *District Attorney's Off. for Third Judicial Dist. v. Osborne*, 557 U.S. 52, 65 (2009); *Hill v. McDonough*, 547 U.S. 573, 576 (2006); *Wilkinson*, 544 U.S. at 76; *Nelson v. Campbell*, 541 U.S. 637, 639 (2004); *Muhammad v. Close*, 540 U.S. 749, 753 (2004) (per curiam); *Edwards v. Balisok*, 520 U.S. 641, 643 (1997); *Heck v. Humphrey*, 512 U.S. 477, 480 (1994); *Wolff v. McDonnell*, 418 U.S. 539, 542-43 (1974); *Preiser*, 411 U.S. at 487.

(2011); *Edwards v. Balisok*, 520 U.S. 641, 643, 648-49 (1997); *Heck v. Humphrey*, 512 U.S. 477, 481, 483, 487 (1994); *Preiser*, 411 U.S. at 488-89.

It is black-letter law that "[w]hether a cause of action exists is not a question of *jurisdiction*." *Air Courier Conference of Am. v. Am. Postal Workers Union*, 498 U.S. 517, 523 n.3 (1991) (emphasis added); *see also id.* (noting that courts may proceed on the assumption that a cause of action exists without needing to decide the issue). Accordingly, in all of its habeas-channeling decisions (*see supra* note 7), the Supreme Court has never once characterized the analysis as affecting the court's subject-matter jurisdiction.[8]

Indeed, the Court's analysis in one of those cases, *Skinner v. Switzer*, signaled the opposite. *Skinner* presented two issues: (1) whether a state prisoner seeking DNA testing of evidence could bring his claim under Section 1983 (as opposed to a habeas action), and (2) whether the prisoner's action was barred by the *Rooker-Feldman* doctrine. 562 U.S. at 524-25, 531-36. In her opinion for the Court, Justice Ginsburg consistently characterized the *Rooker-Feldman* issue as one regarding "federal-court subject-matter jurisdiction." *Id.* at 531; *see also id.* at 531-33. But the

---

[8] In *Nelson*, the lower courts had dismissed the prisoner's Section 1983 suit for lack of jurisdiction, but that was because the action would have qualified as an unauthorized "second or successive" petition if it were treated as a habeas action. 541 U.S. at 642; *see also* 28 U.S.C. § 2244(b); *Burton v. Stewart*, 549 U.S. 147, 152-53 (2007) (district courts lack jurisdiction to entertain an unauthorized second or successive petition).

opinion did not so characterize the habeas-channeling issue. *Id.* at 531; *see also id.* 533-36.

And crucially, the Supreme Court has also held that the habeas-channeling rule is *subject to waiver*—which necessarily means the rule is *not* jurisdictional. In *Muhammad v. Close*, the Court considered whether a state prisoner's Section 1983 suit was subject to one species of the habeas-channeling rule, the *Heck* bar on certain Section 1983 claims. 540 U.S. 749, 750 (2004) (per curiam). *Heck* held that where success in a state prisoner's Section 1983 action would necessarily call into question the validity of a state conviction or sentence, the action cannot proceed until the prisoner invalidates that conviction or sentence through state or federal post-conviction proceedings. 512 U.S. at 483-87; *see also Muhammad*, 540 U.S. at 751. In *Muhammad*, after rejecting the court of appeals' reasoning for why the *Heck* bar applied, the Court determined that the government had failed to timely raise another argument that might have shown that *Heck* did in fact bar the suit—and declined to adjudicate that argument as a result. *See* 540 U.S. at 755.

*Muhammad* thus held "that the government had waived a habeas exclusivity argument." *Skinner v. U.S. Dep't of Justice*, 584 F.3d 1093, 1100 (D.C. Cir. 2009); *see also Heck*, 512 U.S. at 483 (explaining that the issue in *Heck* was "the same as the issue . . . in *Preiser*: whether the claim is cognizable under § 1983 at all"); *Davis*, 716 F.3d at 663 (describing *Heck* as "apply[ing] *Preiser*'s habeas-channeling rule").

Of course, if the habeas-channeling rule were jurisdictional, the Supreme Court could not have disposed of the argument in that manner. *See Fort Bend Cnty.*, 139 S. Ct. at 1849.[9]

In its order asking the parties to brief the jurisdictional question, this Court pointed to its prior statement in *Aamer v. Obama*, 742 F.3d 1023 (D.C. Cir. 2014). *See* Summ. Affirmance Order 2. In *Aamer*—which did not concern the habeas-channeling rule—the Court was considering whether Guantanamo detainees' conditions-of-confinement claim sounded in habeas at all. In the course of parsing the significance of an earlier circuit decision touching on that subject, the *Aamer* Court noted that "the habeas statute [28 U.S.C. § 2241] is jurisdictional, so whether a claim is the type that sounds in habeas is itself a jurisdictional question." 742 F.3d at 1033. *Aamer* also stated that "[j]ust as plaintiffs invoking federal question jurisdiction must assert claims that turn on questions of federal law, petitioners invoking habeas jurisdiction must assert claims that sound in habeas." *Id.*

*Aamer* correctly observed that the Supreme Court has characterized the scope of a court's authority to grant habeas relief under Section 2241 as an issue of the court's habeas "jurisdiction." *Id.*; *see, e.g.*, *Rasul v. Bush*, 542 U.S. 466, 473-74,

---

[9] Consistent with *Muhmmad* and the analysis in *Heck* itself, some of this Court's sister circuits have strongly suggested that the *Heck* bar is not jurisdictional. *See Teagan v. City of McDonough*, 949 F.3d 670, 678 (11th Cir. 2020) (per curiam) (citing cases).

481-82, 484 (2004). And there is no doubt that *some* requirements of habeas—for instance, the requirement that the petitioner be "in custody," 28 U.S.C. § 2241(c)—are jurisdictional, in the sense that they are an absolute prerequisite for a federal court to entertain a habeas action. *See Maleng v. Cook*, 490 U.S. 488, 490, 493-94 (1989) (per curiam).

But as discussed above, it is equally well settled that not *all* habeas procedural requirements limit the court's subject-matter jurisdiction. *See supra* at 25-26. So it does not necessarily follow from the premise that "whether a claim is the type that sounds in habeas is . . . a jurisdictional question" that the habeas-channeling rule—which, again, was born of a line of cases interpreting the scope of the Section 1983 cause of action—also has a jurisdictional character. *Aamer* does not speak to the question raised in this Court's briefing order.

A much earlier decision of this Court, *Monk*, arguably did pass on the subject. Citing *Preiser*, *Monk* held that the plaintiff's suit challenging his conviction and seeking injunctive and declaratory relief should have been brought in habeas. 793 F.2d at 366. In the course of that analysis, *Monk* stated that Congress's "specific determination" that federal habeas provides the appropriate remedy for the plaintiff's claims "must override the general terms of the declaratory judgment and federal question [jurisdiction] statutes." *Id.*; *see also id.* at 370 (noting that because the habeas statute "provides the *exclusive* basis for jurisdiction," other statutes cannot

"supply an independent basis for jurisdiction"). And because the government had objected to the prisoner's failure to sue his immediate custodian in his place of imprisonment, *see id.* at 366, *Monk* held that the plaintiff's recharacterized habeas action failed for lack of personal jurisdiction and venue, *id.* at 368-69. To the extent *Monk* suggests that the habeas-channeling rule is jurisdictional, however, the 1986 decision has been overtaken by the Supreme Court's decision in *Muhammad*. *See Skinner*, 584 F.3d at 1100 (recognizing *Muhammad*'s holding that the habeas exclusivity rule can be waived).[10]

Thus, if this Court were to decide the question, it should squarely hold that a prisoner's non-compliance with the habeas-channeling rule does not deprive courts of subject-matter jurisdiction—meaning that courts have no obligation to enforce the rule *sua sponte*. But again, the rule is satisfied here regardless, because Dufur's challenge to his parole denial may proceed in habeas.

## II. THE COMMISSION'S DENIAL OF MANDATORY PAROLE EXCEEDED ITS STATUTORY DISCRETION AND VIOLATED DUE PROCESS

Turning to the merits, Dufur has stated a claim for relief based on the Commission's denying him mandatory parole under 18 U.S.C. § 4206(d). The

---

[10] In any event, as previously noted, *Monk* made clear that a prisoner action subject to the habeas-channeling rule should not be dismissed out of hand, but instead should be recharacterized as a habeas action and evaluated under the standards governing such actions. *See supra* at 24-25.

district court recognized that the Commission's parole decision is subject to judicial review through habeas or under the Fifth Amendment Due Process Clause. JA44-47, 56-57 (Op. 13-16, 25-26). Under those frameworks, the Commission's decision may be overturned if it exceeded the scope of the Commission's statutory discretion, lacked an evidentiary foundation, or was so irrational as to be fundamentally unfair.

Dufur is entitled to relief on those grounds here. Section 4206(d) *required* the Commission to release Dufur after he had served thirty years of his life sentence unless it found that one of two enumerated exceptions applied. The Commission purported to find both exceptions met. But each of its determinations improperly rested solely on events taking place before Dufur was even sentenced, and were otherwise so arbitrary and bereft of evidentiary support as to deny Dufur due process. And because the Commission rested its final denial decision on the presence of *both* exceptions, if this Court were to find that one of those determinations is invalid, a remand to the Commission would be necessary.

### A. The Court Must Vacate A Denial Of Mandatory Parole Under Section 4206(d) That Exceeds The Commission's Statutory Discretion Or Denies Due Process

This Court has recognized the availability of habeas to review the Commission's parole determinations. *See Bailey*, 793 F.3d at 135. It has not specifically adopted a standard against which to judge the legality of Commission decisions. But it has signaled agreement with its sister circuits that a court sitting in

habeas can vacate a parole determination if there is not "'a rational basis in the record for the [Commission's] conclusions embodied in its statement of reasons.'" *Id.* (quoting *Furnari v. U.S. Parole Comm'n*, 531 F.3d 241, 247-48 (3d Cir. 2008)).[11] And other circuits have made clear that the habeas standard of review includes the authority to vacate determinations that exceed the Commission's discretion under its governing statutes or are so "arbitrary and capricious" as to violate the Constitution. *See Glumb v. Honstead*, 891 F.2d 872, 873 (11th Cir. 1990) (per curiam) (reversal is warranted where the Commission's decision "involves flagrant, unwarranted, or unauthorized action that constitutes an abuse of the Commission's discretion"); *Langella v. Anderson*, 612 F.3d 938, 940 (8th Cir. 2010) ("We have jurisdiction to review a prisoner's claim only insofar as it properly alleges that the Parole Commission 'exceeded the scope of its discretion, violated the Constitution, or reached decisions so arbitrary and capricious as to amount to a violation of due process.'" (citation omitted)).[12]

---

[11] *See also Curtis v. Chester*, 626 F.3d 540, 544 (10th Cir. 2010) (same); *Fazzini v. Northeast Ohio Corr. Ctr.*, 473 F.3d 229, 232 n.2 (6th Cir. 2006) (same); *Slader v. Pitzer*, 107 F.3d 1243, 1246 (7th Cir. 1997) (same).

[12] *See also Zannino v. Arnold*, 531 F.2d 687, 690-91 (3d Cir. 1976) (judicial review is available to ensure "the Board has followed criteria appropriate, rational and consistent with the statute and that its decision is not arbitrary and capricious, nor based on impermissible considerations"); *Maddox v. U.S. Parole Comm'n*, 821 F.2d 997, 1000 (5th Cir. 1987) (using the "flagrant, unwarranted, or unauthorized" standard (citation omitted)); *Moreno-Morales v. U.S. Parole Comm'n*, 141 F.3d

Consistent with those standards, this Court has held that Commission decisions should be vacated if they were "based upon an impermissible factor." *Alamo v. Clay*, 137 F.3d 1366, 1368 (D.C. Cir. 1998). This Court has also held that parole decisions violate due process if they are "either totally lacking in evidentiary support or . . . so irrational as to be fundamentally unfair." *Ford v. Massarone*, 902 F.3d 309, 321 (D.C. Cir. 2018) (citation omitted); *Johnson v. District of Columbia*, 927 F.3d 539, 547 (D.C. Cir. 2019) (same).

Here, the question is whether the Commission exceeded the scope of its statutory discretion or reached an irrational determination in applying 18 U.S.C. § 4206(d) in Dufur's case. That provision states:

> Any prisoner, serving a sentence of five years or longer, who is not earlier released under this section or any other applicable provision of law, *shall be released* on parole after having served two-thirds of each consecutive term or terms, or after serving thirty years of each consecutive term or terms of more than forty-five years including any life term, whichever is earlier: *Provided, however*, That the Commission shall not release such prisoner if it determines [1] that he has seriously or frequently violated institution rules and regulations or

---

1149, 1998 WL 124718, at *3 (1st Cir. 1998) (per curiam) ("test[ing]" the Commission's decision for "whether it is irrational, arbitrary or capricious").

The Fourth, Eighth, and Ninth Circuits have held that Commission decisions cannot be overturned for an "abuse of discretion." *Garcia v. Neagle*, 660 F.2d 983, 987-88 (4th Cir. 1981); *Jones v. U.S. Bureau of Prisons*, 903 F.2d 1178, 1182-84 (8th Cir. 1990); *Wallace v. Christensen*, 802 F.2d 1539, 1551 (9th Cir. 1986). But those circuits agree that they may review whether the Commission "acted outside . . . statutory limits" or violated the Constitution. *Wallace*, 802 F.2d at 1551-52; *see also Kennedy v. Allera*, 612 F.3d 261, 266 (4th Cir. 2010) (courts may review whether the Commission violated "constitutional, statutory, regulatory, or other restrictions" (citation omitted)); *Langella*, 612 F.3d at 940.

> [2] that there is a reasonable probability that he will commit any Federal, State, or local crime.

*Id.* (first emphasis added). Section 4206(d) is known as the "mandatory parole" provision because it creates a "presumption of mandatory parole release" after a prisoner has served two-thirds of his sentence or 30 years of a life sentence. JA14 (NOA Appeal); *see also* 41 Fed. Reg. 19,326, 19,326 (May 12, 1976) (the "mandatory parole" provision "requires that a prisoner be released after serving two-thirds of his sentence provided that the Commission does not determine that there is a reasonable probability that he will commit a new crime or that he has frequently or seriously violated the rules of the institution in which he is confined"); *Bruscino v. True*, 708 F. App'x 930, 935 (10th Cir. 2017) (Section 4206(d) "creates a rebuttable presumption favoring release on parole"). In other words, as the Commission has conceded, Section 4206(d) sets forth a "*requirement* that otherwise parole-eligible prisoners who have served significant portions of their sentences receive parole," subject to just two enumerated "statutory exceptions." Summ. Affirmance Mot. 1-2 (emphasis added).

There is no dispute that in 2016—after he had served well over thirty years of his life sentence—Dufur was eligible for mandatory parole under this provision. But the Commission's final decision on appeal purported to invoke both of the enumerated statutory exceptions. JA14 (NOA Appeal). As explained below, each of those determinations was invalid.

### B. The Commission's Finding That Dufur "Seriously Violated Institution Rules" Exceeded Its Statutory Discretion And Was Irrational

The Commission determined that Dufur "seriously violated institution rules" within the meaning of Section 4206(d)'s exception because he attempted to escape from the King County jail on October 14, 1979, before he was sentenced on his federal convictions. JA14 (NOA Appeal). But as the Commission's own regulation acknowledges, Section 4206(d)'s reference to "institution rules" is to *the institution where the prisoner is serving his federal sentence*. The Commission disregarded that clear context-based limitation on the statutory text.

In theory, the word "institution" could be read literally to encompass any kind of institution where the prisoner has been detained for any reason during the course of his life. But "[a] word in a statute may or may not extend to the outer limits of its definitional possibilities"; "the purpose and context of the statute" must be considered. *Dolan v. U.S. Postal Serv.*, 546 U.S. 481, 486 (2006); *see also Abuelhawa v. United States*, 556 U.S. 816, 819-20 (2009) (same). And here, the context of Section 4206(d) is the federal parole regime—a system designed to assess prisoners' *rehabilitation* while fulfilling their sentences for their federal crimes and to give them an incentive to maintain good behavior while in prison. *See, e.g.*, *Greenholtz v. Inmates of the Neb. Penal & Corr. Complex*, 442 U.S. 1, 13 (1979) ("the ultimate purpose of parole" is "the long-range objective of rehabilitation");

*Walker v. Prisoner Review Bd.*, 694 F.2d 499, 502 (7th Cir. 1982) ("institutional behavior" is "evidence of rehabilitation" relevant to a parole determination); *see also Parole, Black's Law Dictionary* (11th ed. 2019) (noting that "parole is usu[ally] granted for good behavior").

That statutory purpose is made explicit in the legislative history of Section 4206, which was enacted as part of the Parole Commission and Reorganization Act in 1976. Pub. L. No. 94-233, § 2, 90 Stat. 219, 219. The legislation's Conference Report stated that Section 4206 requires the Parole Commission to "reach a judgment on the institutional behavior of each prospective parolee." H.R. Rep. No. 94-838, at 25 (1976) (Conf. Rep.). And the Conference Report emphasized that a federal prisoner's "understanding" of "the importance of his institutional behavior" to his eventual parole determination "*is crucial to the maintenance of safe and orderly prisons*." *Id.* (emphasis added); *see also id.* at 19 (explaining that "[f]rom a historical perspective, parole originated . . . to reward prison inmates for their exemplary behavior while incarcerated"); S. Rep. No. 94-369, at 15 (1975) (same). It makes little sense to evaluate a prisoner's behavior *before* he started serving his federal sentence to determine whether he has been rehabilitated in prison. Likewise, denying federal prisoners parole on the basis of their misconduct in other institutions would hardly incentivize good behavior while in federal custody.

It makes far more sense to read "institution rules" in Section 4206(d) to refer only to the rules of the institution where the prisoner is serving his federal sentence. And that sensible reading is consistent with the case law: Amicus has been unable to find a single court decision upholding a mandatory-parole denial based on the prisoner's "frequent or serious rule violations" prior to his sentencing on a federal offense.

That reading is also consistent with the Commission's *own regulation*—which rejects the broad reading of "institution rules" that the Commission adopted here. *See* 28 C.F.R. § 2.53. That regulation states that a prisoner eligible for mandatory parole shall be released unless "the prisoner has frequently or seriously violated the rules of the institution *in which he is confined*." *Id.* § 2.53(a) (emphasis added).[13] The Commission's regulation thus expressly clarifies that Section 4206(d)'s reference to "institution rules" encompasses only the institution in which the prisoner is currently being confined to serve his federal sentence. And the regulation reinforces that the Commission's analysis cannot take into account the prisoner's previous violations of the rules of *other* institutions before he began serving that sentence. That reasonable interpretation warrants deference under *Chevron U.S.A.*

---

[13] The Commission's regulation also aligns with the language of Section 4206(a), which grants the Commission the discretion to parole a prisoner before his two-thirds or 30-year date and similarly conditions release on the Commission's determination that the prisoner "has substantially observed the rules of the institution or institutions to which he has been confined." 18 U.S.C. § 4206(a).

*Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984). *See United States v. Mead Corp.*, 533 U.S. 218, 229 (2001) (explaining that "a very good indicator of [congressional] delegation meriting *Chevron* treatment is express congressional authorizations to engage in the process of rulemaking"); 18 U.S.C. § 4203(a)(1) (granting the Commission rulemaking authority).

Interpreting "institution" expansively to refer to any facility where a federal prisoner has ever been confined in the past would also produce absurd results. *See Holland as Trustee of the UMWA 1992 Benefit Plan v. Arch Coal, Inc.*, 947 F.3d 812, 819 (D.C. Cir. 2020) (courts should interpret statutes to avoid "absurd results" that are "'contrary to common sense'" (citation omitted)). For instance, that reading would allow the Commission to deny a federal prisoner mandatory parole based on a rule infraction committed while he was serving a prior state sentence for an entirely unrelated crime. Indeed, the Commission could deny federal parole even if that prior term of imprisonment was decades before the prisoner even *committed* the federal crime at issue.

Dufur's own situation reinforces that the Commission's reading cannot be correct—or, at least, that the Commission's determination was "so irrational as to be fundamentally unfair." *Ford*, 902 F.3d at 321 (citation omitted). The Commission effectively determined that Dufur can never be paroled based on a characteristic that was present *on the day he was sentenced* and which he can never change or

overcome—no matter how faithfully he continues to observe institutional rules while serving his federal term of imprisonment. In other words, according to the Commission, Dufur's fate was sealed before the district court even handed down the sentence in 1979.

The Commission was not free to apply Section 4206(d) in a way that rendered the promise of a "possibility of parole" sentence completely illusory. *See* 18 U.S.C. § 4205(a) (mandating that a prisoner "shall be eligible for [parole] release . . . after serving ten years of a life sentence"). The Commission's insistence that Dufur was ineligible for parole before he ever stepped foot in a federal institution exceeded the scope of its statutory discretion, and was so irrational and fundamentally unfair as to violate due process.

### C. The Commission Improperly Determined That It Is "Reasonably Probable" That Dufur Will Commit Another Crime

The Commission's finding that the second exception to mandatory parole applied—i.e., that there is a "reasonable probability" that Dufur will commit another "violent crime"—is equally infirm. JA13 (NOA). The Commission exceeded its statutory discretion and reached an entirely irrational determination by considering only Dufur's pre-conviction and pre-sentencing conduct, by failing to take account of Dufur's advanced age and the declining risk of recidivism, and by ignoring the fact that granting Dufur parole will not actually result in his release from confinement, given his outstanding California sentence.

The Commission explicitly rested its finding that Dufur is "a high risk for violent crime" on the "basis" of Dufur's 1979 King County escape attempt, his 1979 murder of a Customs inspector, and his 1972 California murder conviction. JA13 (NOA); *see also* JA14 (NOA Appeal). The Commission relied on *nothing* that occurred during the thirty-seven years in which Dufur has been serving time in prison following his federal sentencing. That is not surprising. The evidence before the Commission showed that Dufur had not committed any kind of prison infraction within the past fifteen years, and had *never* been disciplined for an act of violence. *See* JA10 (Compl. ¶ 8 & n.1); JA25-26 (Mot. to Dismiss Ex. A at 8-9). Even Dufur's most recent 2001 infraction—for "possession" of a weapon that was found in a toilet pipe—was of little probative value, in light of a prison official's testimony that he and others believed that Dufur had been wrongly blamed. JA10 (Compl. ¶ 8 n.1). The Commission nonetheless reasoned that "the nature and seriousness of [Dufur's] repetitive violent behavior indicates to the Commission that [he] remain[s] a threat to the community if . . . released." JA13 (NOA).

It is doubtful that the Commission was even permitted to rely on Dufur's offenses of conviction and prior criminal history in making its mandatory parole determination under Section 4206(d). Unlike the subsection setting forth the factors that the Commission is supposed to consider in deciding whether to grant *discretionary* parole—i.e., parole before the prisoner's two-thirds or thirty-year

date—Section 4206(d) does not instruct the Commission to take into account "the nature and circumstances of the offense" or "the history . . . of the prisoner." 18 U.S.C. § 4206(a).

This omission was likely intentional. *See Barnhart v. Sigmon Coal Co.*, 534 U.S. 438, 452 (2002) ("[W]hen Congress includes particular language in one section of a statute but omits it in another section . . ., it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." (citation omitted)); *cf. United States v. Long*, No. 20-3064, 2021 WL 1972245, at *10 (D.C. Cir. May 18, 2021) ("When [Congress] wanted to make a lack of dangerousness an explicit and inflexible precondition to release [under compassionate release provisions of 18 U.S.C. § 3582(c)], it knew how to say so."). The Conference Report accompanying the 1976 legislation explains that Section 4206(d), which had no predecessor under the prior parole regime, "provides *more liberal criteria* for release on parole for prisoners with long sentences." H.R. Rep. No. 94-838, at 27 (emphasis added). It appears that Congress deliberately set forth different criteria for mandatory-parole determinations under Section 4206(d)—criteria focused exclusively on the prisoner's rehabilitation in prison—so that a great number of those prisoners would be released at that juncture.

But even if the Commission was not wholly precluded from considering Dufur's offenses of conviction and pre-offense criminal history, it was improper—

or at least wholly irrational—for the Commission to base its determination *entirely* on those factors. Section 4206(d) explicitly allows for mandatory parole for offenders serving life sentences. In 1976, life sentences were generally possible only for the most heinous or societally harmful crimes—such as murder or other serious crimes where a death results, rape, assassination, some forms of kidnapping, or delivering national defense information to a foreign enemy.[14] Yet Congress established a presumption in favor of parole release for even those offenders. The Commission's attempt to rebut the presumption based predominantly on the nature of Dufur's underlying offenses contravenes congressional intent. And again, the Commission's denial of parole based solely on factors that were present on the day Dufur was sentenced runs roughshod over the statute promising him parole eligibility and the parole regime's rehabilitative aims. *See* 18 U.S.C. § 4205(a); *supra* at 41.

The Commission's total reliance on events taking place when Dufur was in his teens and early twenties to find that it is "reasonably probable" he will commit another violent crime if paroled in his sixties also ignored the considerable evidence that recidivism sharply declines with age. As the U.S. Sentencing Commission has found, "[o]lder offenders [are] substantially less likely than younger offenders to recidivate following release." U.S. Sentencing Commission, *The Effects of Aging*

[14] *See, e.g.*, 18 U.S.C. §§ 34, 351, 794, 1201, 2031 (1976).

*on Recidivism Among Federal Offenders* 3 (Dec. 2017), https://www.ussc.gov/sites/default/files/pdf/research-and-publications/research-publications/2017/20171207_Recidivism-Age.pdf ("*Sentencing Commission Aging Report*"); *see also id.* (in the Sentencing Commission's eight-year study of released federal offenders, "13.4 percent of offenders age 65 or older at the time of release were rearrested compared to 67.6 percent of offenders younger than age 21 at the time of release"). This "'aging out' of crime" phenomenon—i.e., the fact that rates of involvement in crime "begin declining by a person's early to mid-twenties and continue on a downward trajectory"—is well known and well documented in the social science literature and other authorities.[15] Indeed, research has specifically

---

[15] Marc Mauer, *Long-Term Sentences: Time to Reconsider the Scale of Punishment*, The Sentencing Project (Nov. 5, 2018), https://www.sentencingproject.org/publications/-long-term-sentences-time-reconsider-scale-punishment/ (capitalization altered); *see also, e.g.*, *id.* ("A longstanding finding in the criminology literature is that involvement in criminal activity is strongly dependent on age . . . ."); Jalila Jefferson-Bullock, *Quelling the Silver Tsunami: Compassionate Release of Elderly Offenders*, 79 Ohio St. L.J. 937, 972-73 (2018) ("Criminologists and sociologists confirm that propensity for criminality is, in many respects, directly informed by age. . . . The likelihood of engaging in criminal conduct decreases as self-control develops with age. Risky behaviors are attractive and more present in youth . . . . Thus, crime generally persists in youth and desists in older age." (footnote omitted)); Robert Weisberg et al., *Life In Limbo: An Examination of Parole Release for Prisoners Serving Life Sentences with the Possibility of Parole in California* (Sept. 2011), https://law.stanford.edu/wp-content/uploads/sites/default/files/publication/259833/doc/slspublic/SCJC%20Lifer%20Parole%20Release%20Sept%202011.pdf ("Not only are most violent crimes committed by people under 30, but even the criminality that continues after that declines drastically after age 40 and even more so after age 50."); Daniel O'Connell et. al., *Violent Offending, Desistance, and Recidivism*, 103

shown that "[o]lder offenders released from prison after serving lengthy sentences are much less likely to return to prison due to the commission of a serious crime," and "[t]he recidivism rate for lifers is much lower by far than that for other offenders." Marie Gottschalk, *Sentenced to Life: Penal Reform and the Most Severe Sanctions*, 9 Ann. Rev. L. & Soc. Sci. 353, 360 (2013). This is true of murderers serving life sentences in particular.[16]

There was simply no reason for the Commission to conclude that Dufur is the rare senior offender who will buck the trend. Again, in reaching its determination that Dufur "remains a threat to the community," Commission pointed to *no* evidence that he has continued to exhibit violent qualities while in federal prison. Dufur had kept a completely clean record for fifteen years, and had never been disciplined for

---

Marq. L. Rev. 983, 987 (2020) ("[I]t is clear that criminal behavior tends to start in the early teens, increases throughout late adolescence, peaking in the teenage years (seventeen to nineteen years), and then declines in the early twenties."); *United States v. Johnson*, 685 F.3d 660, 661 (7th Cir. 2012) (Posner, J.) (explaining that "the propensity to engage in criminal activity declines with age, and is, on average, sharply lower for persons over 70—although persons 65 and older are 13 percent of the population, they account for only seven tenths of one percent of arrests" (citing FBI arrest statistics)).

[16] A 2011 Stanford Law School study evaluating California "lifers"—inmates serving life-with-the-possibility-of-parole sentences—found that "among the 860 murderers paroled . . . since 1995, only *five* individuals have returned to jail or returned to the California Department of Corrections and Rehabilitations for felonies since being released, and none of them recidivated for life-term crimes." *Weisberg*, *supra*, at 17; *see also id.* (noting that this represents "a lower than one percent recidivism rate" as compared to the state's overall prison-recommitment rate of 48.7%).

violence. JA10 (Compl. ¶ 8 & n.1); JA25-26 (Mot. to Dismiss Ex. A). Nor is there any indication that Dufur failed to appreciate the grave wrongs he committed earlier in his life or lacked remorse. To the contrary, Dufur told the Commission in 2016—as he had in past proceedings—that he took full responsibility for the crimes of his youth and felt shame and sorrow for what he had done. *See supra* at 11-12. The Commission also called Dufur's prior criminal behavior "repetitive." JA13 (NOA). But the Sentencing Commission has found that offenders under thirty have the highest re-arrest rate—further indicating that Dufur's multiple offenses between the ages of eighteen and twenty-five are not probative of his likelihood to recidivate decades later. *Sentencing Commission Aging Report* 22.

The Commission's determination that it is probable that Dufur will commit another crime if paroled also inexplicably failed to account for Dufur's outstanding state sentence and the California detainer lodged against him. The Commission determined that Dufur "remain[ed] a threat to *the community*" if "released from custody"—without grappling with the fact that Dufur would not actually be set free, but instead transferred to California to serve his life sentence in state prison. JA13 (NOA) (emphasis added); *see also* 28 C.F.R. § 2.32(a)(1) (explaining that when a state has a pending detainer against a federal prisoner, the Commission has the

option to order parole to state authorities only—without allowing the prisoner's release into the public should the detainer be withdrawn).[17]

The district court was dismissive of this argument, reasoning that Dufur's "history demonstrates that an individual serving a sentence under state law is fully capable of committing a further crime." JA46-47 (Op.). But the Commission's two decisions provide no indication that it considered the California detainer at all. *See* JA13 (NOA); JA14 (NOA Appeal). And because "Congress has required the Commission to furnish a statement of reasons to the prisoner so that he can receive 'an understandable explanation of his parole status,'" the Commission's written decisions must "reveal *reasoning* and not simply present conclusions." *Marshall v. Lansing*, 839 F.2d 933, 943 (3d Cir. 1988) (quoting S. Rep. No. 94-369, at 25); *see also* 18 U.S.C. § 4206(b) ("If parole is denied such notice shall state with particularity the reasons for such denial."). The district court was not free to hypothesize the Commission's reasoning after the fact. *See Marshall*, 839 F.2d at 943-44 (rejecting the Commission's argument that a remand for a new decision was

---

[17] California law provides that any prisoner serving a life sentence is not eligible for parole unless he has served a minimum of seven years. Cal. Penal Code § 3046(a)(1). Commission records indicate that Dufur served five years of his California sentence before escaping in 1977. *Dufur* 18-2156 Dkt. No. 13-3 at 16. And it appears that Dufur remains on "escape status" in California, *see id.* at 19, which means that none of his time in federal custody can count toward his state sentence, Cal. Code Regs. tit. 15, § 3371.1(c)(2). It thus appears there is no reasonable probability that California would immediately parole Dufur upon taking custody of him.

unnecessary "because [the Commision's] reasoning could readily be deduced"); *Sec. & Exch. Comm'n v. Chenery Corp.* (*Chenery I*), 318 U.S. 80, 94-95 (1943) ("[A]n administrative order cannot be upheld unless the grounds upon which the agency acted in exercising its powers were those upon which its action can be sustained."); *Sec. & Exch. Comm'n v. Chenery Corp.* (*Chenery II*), 332 U.S. 194, 196-97 (1947) ("It will not do for a court to be compelled to guess at the theory underlying the agency's action; nor can a court be expected to chisel that which must be precise from what the agency has left vague and indecisive.").

Even if it were possible to consider the logic the district court offered on the Commission's behalf, that reasoning would still fail. If the Commission did implicitly reason that it was reasonably probable that Dufur would *escape from California prison again* and subsequently pose a "threat to the community," JA13 (NOA), that finding would itself be lacking in evidentiary support and irrational. A "reasonable *possibility*" is not the same thing as a "reasonable *probability*." *Strickler v. Greene*, 527 U.S. 263, 291 (1999). And it is not *probable* that Dufur—who never once attempted to escape from federal prison and has maintained a completely clean disciplinary record for the past fifteen years—will successfully escape from a California facility now that he is a sixty-seven-year-old senior citizen. Especially in light of the evidence that recidivism declines with age, the fact that Dufur managed

that feat in 1977 when he was twenty-three does not make it reasonably probable that he will manage (or even try) it today.

### D. A Remand For A New Parole Determination Is Necessary If Either Basis Of The Commission's Decision Is Found Invalid

Finally, if this Court determines that either of the Commission's two determinations is invalid, then Dufur must receive a new parole determination.

In its initial Notice of Action, the Commission justified the denial on the basis that there was a reasonable probability that Dufur would commit another violent crime. JA13 (NOA). Once Dufur appealed—arguing that the Commission could not base such a finding on his conviction offenses, and pointing out that he had not incurred a disciplinary charge since 2001 and had never been disciplined for causing harm to another person—the Commission issued a new, "final" decision adding a second basis to justify its denial. *See* JA20, 22, 25-26 (Mot. to Dismiss Ex. A); JA14 (NOA Appeal). Crucially, the Commission's final Notice of Action on Appeal did not state that either of its two rationales would independently sustain its decision to deny Dufur parole. JA14 (NOA Appeal).

"[W]hen an agency relies on multiple grounds for its decisions, some of which are invalid," the decision as a whole must be set aside unless "the agency would clearly have acted on [the valid] ground even if the other [invalid grounds] are unavailable." *Casino Airlines, Inc. v. Nat'l Transp. Safety Bd.*, 439 F.3d 715, 717-18 (D.C. Cir. 2006) (citation omitted); *see also Williams Gas Processing-Gulf Coast*

*Co. v. Fed. Energy Regulatory Comm'n*, 475 F.3d 319, 329-30 (D.C. Cir. 2006) (same); *Int'l Union, United Mine Workers v. U.S. Dep't of Labor*, 358 F.3d 40, 44-45 (D.C. Cir. 2004) (finding that an agency "failed to provide an adequate explanation for its decision" where "[t]wo of the three reasons it gave . . . would not support its decision," and the court did "not know—nor [was it] free to guess—what the agency would have done had it realized that it could not justify its decision [on those two invalid grounds]").

This court "do[es] not know," nor is it "free to guess," what the Commission would have done had it realized that either of its two rationales was legally invalid. *Int'l Union*, 358 F.3d at 44-45. On appeal, the Commission evidently saw a need to bolster its initial decision relying solely on the "reasonable probability of future crime" rationale. This indicates that if the Commission's second rationale were held improper, the Commission could reach a different determination. Likewise, the fact that the Commission never based its denial of parole *solely* on the "serious violation of institution rules" rationale indicates that the Commission may not have denied Dufur mandatory parole solely on that basis. Given the absence of a specific statement in the Commission's final decision explaining that either rationale would be sufficient, it is not "clear" what the Commission would have done had it recognized that the reasoning underlying one of the rationale's was legally infirm. If Dufur were to prevail in showing that the Commission exceeded statutory or

constitutional bounds in reaching either of those findings, a remand would be necessary for the Commission to make a new mandatory-parole determination.[18]

## CONCLUSION

This Court should reverse the dismissal of Dufur's action and remand the case to the district court for further proceedings.

Dated: June 2, 2021

Respectfully submitted,

*/s/ Caroline A. Flynn*

Caroline A. Flynn
*Counsel of Record*
Roman Martinez
Morgan Hoffman*
LATHAM & WATKINS LLP
555 Eleventh Street, NW
Suite 1000
Washington, DC 20004
(202) 637-2200
caroline.flynn@lw.com

* Admitted to practice in Utah only. All work supervised by a member of the DC Bar.

*Court-Appointed Amicus Curiae in Support of Plaintiff-Appellant*

---

[18] As noted above, because Dufur's case is an original jurisdiction case, all of the Commissioners should have voted on both the initial determination and the final determination on appeal. *See supra* note 4. It is not clear from the face of the Notice of Action on Appeal whether that happened. If it did not, then the Commission can rely only on its initial Notice of Action, which did not include the "serious violation of institution rules" rationale.

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT, TYPEFACE REQUIREMENTS, AND TYPE-STYLE REQUIREMENTS

1. This document complies with the type-volume limit of Federal Rule of Appellate Procedure 32(a)(7)(B) because, excluding the parts of the document exempted by Federal Rule of Appellate Procedure 32(f) and Circuit Rule 32(e)(1), this document contains 12,996 words, as determined by the word-count function of Microsoft Word 2016.

2. This document complies with the typeface requirements of Federal Rule of Appellate Procedure P. 32(a)(5) and the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word 2016 in 14-point Times New Roman Font.

*/s/ Caroline A. Flynn*
Caroline A. Flynn

**CERTIFICATE OF SERVICE**

I hereby certify that on this 2nd day of June, 2021, I filed the foregoing Opening Brief of Court-Appointed Amicus Curiae in Support of Plaintiff-Appellant with the Clerk of the United States Court of Appeals for the D.C. Circuit via the CM/ECF system, which will send notice of such filing to all registered CM/ECF users.

I further certify a copy of the foregoing was sent via first-class mail, postage prepaid, to Plaintiff-Appellant Artie Dufur at the below address:

Artie Dufur
R09917-086
FCI Hazelton
P.O. Box 5000
Bruceton Mills, WV 26525

*/s/ Caroline A. Flynn*
Caroline A. Flynn

# Addendum Pursuant to Federal Rule of Appellate Procedure 28(f)

# TABLE OF CONTENTS


| Description | Page |
|---|---|
| 18 U.S.C. § 4206 | ADD1 |
| 28 C.F.R. § 2.53 | ADD2 |

**18 U.S.C. § 4206**

§ 4206. Parole determination criteria

(a) If an eligible prisoner has substantially observed the rules of the institution or institutions to which he has been confined, and if the Commission, upon consideration of the nature and circumstances of the offense and the history and characteristics of the prisoner, determines:

(1) that release would not depreciate the seriousness of his offense or promote disrespect for the law; and

(2) that release would not jeopardize the public welfare;

subject to the provisions of subsections (b) and (c) of this section, and pursuant to guidelines promulgated by the Commission pursuant to section 4203(a)(1), such prisoner shall be released.

(b) The Commission shall furnish the eligible prisoner with a written notice of its determination not later than twenty-one days, excluding holidays, after the date of the parole determination proceeding. If parole is denied such notice shall state with particularity the reasons for such denial.

(c) The Commission may grant or deny release on parole notwithstanding the guidelines referred to in subsection (a) of this section if it determines there is good cause for so doing: *Provided*, That the prisoner is furnished written notice stating with particularity the reasons for its determination, including a summary of the information relied upon.

(d) Any prisoner, serving a sentence of five years or longer, who is not earlier released under this section or any other applicable provision of law, shall be released on parole after having served two-thirds of each consecutive term or terms, or after serving thirty years of each consecutive term or terms of more than forty-five years including any life term, whichever is earlier: *Provided*, *however*, That the Commission shall not release such prisoner if it determines that he has seriously or frequently violated institution rules and regulations or that there is a reasonable probability that he will commit any Federal, State, or local crime.

## 28 C.F.R. § 2.53

**§ 2.53. Mandatory parole.**

(a) A prisoner (including a prisoner sentenced under the Narcotic Addict Rehabilitation Act, Federal Juvenile Delinquency Act, or the provisions of 5010(c) of the Youth Corrections Act) serving a term or terms of 5 years or longer shall be released on parole after completion of two-thirds of each consecutive term or terms or after completion of 30 years of each term or terms of more than 45 years (including life terms), whichever comes earlier, unless pursuant to a hearing under this section, the Commission determines that there is a reasonable probability that the prisoner will commit any Federal, State, or local crime or that the prisoner has frequently or seriously violated the rules of the institution in which he is confined. If parole is denied pursuant to this section, such prisoner shall serve until the expiration of his sentence less good time.

(b) When feasible, at least 60 days prior to the scheduled two-thirds date, a review of the record shall be conducted by an examiner panel. If a mandatory parole is ordered following this review, no hearing shall be conducted.

(c) A prisoner released on mandatory parole pursuant to this section shall remain under supervision until the expiration of the full term of his sentence unless the Commission terminates parole supervision pursuant to 2.43 prior to the full term date of the sentence.

(d) A prisoner whose parole has been revoked and whose parole violator term is 5 years or more shall be eligible for mandatory parole under the provisions of this section upon completion of two-thirds of the violator term and shall be considered for mandatory parole under the same terms as any other eligible prisoner.